W. W. SUTTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76946. Promulgated January 27, 1937.

*Walter G. Moyle, Esq.,* and *Ralph P. Wanlass, Esq.,* for the petitioner.

*John H. Pigg, Esq.,* for the respondent.

354

OPINION.

Hill: The principal and basic issue in this case is whether or not petitioner acquired, under the contracts of September 5, 1921, and June 7, 1923, a presently vested economic interest in the proceeds of the oil and gas derived from the land owned by the Crews heirs. As petitioner succinctly states in his brief, the real issue is whether the sum of $150,000 paid to and received by petitioner in 1930 represented his share of the oil and gas proceeds arising out of such economic interest, or whether it represented attorney's fees.

Petitioner reported the amount of $150,000 in his income tax return for 1930, and claimed a deduction for depletion of 27½ percent thereof. In computing the deficiency respondent disallowed the deduction for depletion, and treated the entire amount as attorney's fees or compensation for personal services, taxable as ordinary income at both normal and surtax rates.

Petitioner's contention that by the contracts in question he obtained a then vested *economic* interest in the oil and gas production, and that the $150,000 paid to him in 1930 in the compromise settlement of the litigation represented his share of the proceeds arising out of such *economic* interest, we think, can not be sustained. The contracts did not vest in petitioner a present *economic* interest in the proceeds of production, subject to defeasance by a condition subsequent, but the vesting of such an interest was by the express terms of the contracts dependent upon a condition precedent.

The contract of September 5, 1921, specifically provided that only in the event the lease or a part thereof should be canceled through the "effect" of the suit to be instituted and prosecuted by petitioner, the Crews heirs agreed to convey to petitioner an undivided interest in the oil and gas production for his services. The contract further

stipulated that "In case no portion of said lease is canceled, set aside or released through the effects of said suit, it is then agreed between the parties hereto that the parties of the first part are not obligated to pay party of the second part anything for his services in said case."

The contract of June 7, 1923, likewise gave petitioner a right to receive the additional compensation therein provided only upon the happening of a future event, namely, the recovery or collection of some amount from the defendants in the accounting sued for. If no amount was so collected, petitioner was to receive no additional compensation.

Thus, the plainly stated provisions of the contracts, in our opinion, negative the idea that petitioner acquired a present vested *economic* interest of any kind either in the land, proceeds of production, or funds sought to be recovered through the suit for an accounting. The interests agreed to be conveyed to petitioner would have become vested economic interests only in the event of the termination of the litigation in favor of petitioner's clients by final judgment of the court or a settlement by the parties out of court. Prior to the happening of such event, petitioner's interest was contingent and amounted to no more than that of a lienholder, which, while recognizable in equity, is not a vested *economic* interest.

Section 4100, chapter 23, Compiled Oklahoma Statutes, Annotated, 1921, provides that an attorney who files a pleading for a client and endorses thereon his name, together with the words "lien claimed" shall have a lien upon such cause of action and same shall attach to any verdict, decision or judgment in his client's favor and the proceeds thereof, and that no settlement between the parties without the approval of the attorney shall affect or destroy such lien. Petitioner so endorsed the petition and amended petition filed in the litigation involved in this proceeding, and contends that such endorsement, under Oklahoma law, gave him an enforceable economic interest in the production of the oil and gas from the Crews' property. In support of this contention, petitioner cites decisions by the courts of Oklahoma, which, for reasons presently to be stated, we deem it unnecessary to discuss beyond pointing out that, whatever may be the correct interpretation of those decisions, they do not affect the conclusion we reach under the facts in the instant case.

Whether or not the contracts of employment dated September 5, 1921, and June 7, 1923, under the views of the Oklahoma courts, operated as an equitable conveyance to petitioner of an interest in the land or the oil and gas production, subject to the condition subsequent of performance by petitioner of his obligations under the

contracts, the evidence establishes, we think, that prior to such performance by petitioner or fulfillment of the condition subsequent, petitioner on October 11, 1930, agreed to the cancellation of the contracts and released all of his rights thereunder, accepting in place and in lieu thereof another and different consideration as compensation for his services, to wit, $150,000 in cash to be paid to him, which was paid to him under the escrow contract of October 18, 1930.

Subject to performance of the provisions of the agreement of October 11, 1930, which provisions were subsequently carried out, petitioner agreed to and thereby did relinquish and cancel "all debts, claims or controversies in his favor and against the parties of the first part", except the money payment of $150,000; and by the instrument entitled "Release of Contracts", dated October 17, 1930, petitioner for a recited consideration of one dollar released, canceled, assigned, and quitclaimed all of his "right, title and interest in under and through" the contracts of September 5, 1921, and June 7, 1923.

Petitioner, therefore, surrendered his rights under the said contracts in consideration of the payment to him of a cash fee of $150,-000, which represented the final compensation paid to him for his services to the Crews heirs in the litigation, in lieu of the compensation originally agreed upon. The fact that the amount was paid directly to petitioner by the Sinclair Co. out of the settlement fund, we think, is immaterial, and does not change the character of the payment as a cash fee for personal services.

While it is true that in the contract of October 11, 1930, it was stated that petitioner was to have in cash $150,000 "as his share of the funds received in the contemplated settlement of the litigation out of court", this recital, in the light of the other provisions of the contract and contemporaneous instruments, did not constitute the payment to petitioner a payment of royalties arising out of his original interest in the oil and gas production. It was a cash fee to be paid out of the funds received in the contemplated settlement. Indeed, the settlement fund itself had no connection whatever with the payment of royalties, but was merely an amount agreed upon by the parties in the compromise settlement of litigation prosecuted primarily to cancel the original lease. Nor did the compromise settlement provide for the cancellation of the lease. On the other hand, it continued the lease in effect and recognized Sinclair Oil & Gas Co. as the owner thereof. The cancellation of the lease was the condition precedent to the vesting in petitioner of a right to a share of the oil produced from the lands involved. Since the lease was not canceled either as a result of the litigation or of the compromise settlement, no economic interest in the lands ever vested in petitioner.

Having reached the conclusion that the sum of $150,000 received by petitioner in 1930 did not represent income derived from an economic interest in the production of oil and gas from the Crews' property, it follows that petitioner is not entitled to a deduction for depletion at the statutory rate, as claimed by him.

There are two additional contentions urged by petitioner, which require but brief notice. Petitioner argues that if any portion of said sum of $150,000 should be held to represent a consideration for the release and quitclaim of his interest in the oil properties rather than his interest in the mineral production, then such portion of the income is taxable as capital net gain. This contention is sufficiently answered by what we have said above. Petitioner canceled the contracts of September 5, 1921, and June 7, 1923, by the agreement of October 11, 1930, under and pursuant to which latter contract he received a cash fee of $150,000 in lieu of the surrendered rights acquired under the old contracts. The cash fee so received is taxable as ordinary income. Cf. *Escher* v. *Commissioner*, 78 Fed. (2d) 815.

Petitioner further contends on brief that the oil and gas proceeds out of which the $150,000 was paid were received in part by the Farmers State Bank as a fiduciary, and, under section 161 of the Revenue Act of 1928, were taxable to the fiduciary as and when received by it. This contention can not be sustained under the facts. The $150,000 received by petitioner was paid directly to him by the Sinclair Oil & Gas Co. out of the $375,000 settlement fund. No part of the sum paid to petitioner came out of the fund held in escrow by the bank, nor was petitioner, under the final contract of October 11, 1930, entitled to receive any part of that fund.

The remaining issue raised by the pleadings is whether the sum of $150,000 received by petitioner in 1930 as compensation for personal services should be prorated over the years 1920 to 1930, inclusive, when it was earned. Petitioner did not argue this issue on brief, and in his reply brief indicates that it has been abandoned. In any event, the issue must be decided adversely to the petitioner. The entire amount was received by petitioner during the taxable year 1930. He kept his books and filed his income tax return on the basis of cash receipts and disbursements. In such circumstances, compensation for personal services, under section 41 of the Revenue Act of 1928, constitutes taxable income for the year in which actually received. *Agnes B. C. Chormann et al., Executors*, 10 B. T. A. 920; *Adolph Schlett*, 7 B. T. A. 150; *E. F. Cremin*, 5 B. T. A. 1164.

The deficiency determined by the respondent is approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*